**In re John MASSEY, Debtor.**

**Jerry Davis, Plaintiff,**

**v.**

**John Massey, Defendant.**

**Bankruptcy No. 98–6289–RLB–7. Adversary No. 98–333.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Dec. 11, 1998.

---

Allan Lane Yackey, Ladd & Yackey, Indianapolis, IN, for debtor/adversary defendant.

Chad C. Duran, UAW Legal Services Plan, Indianapolis, IN, for adversary plaintiff.

*FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS*

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Complaint to Determine Dischargeability of

Debts Against John Massey (the "Complaint"), filed by Jerry Davis ("Mr. Davis") on July 23, 1998. A trial on the Complaint was held on December 2, 1998. The Court, having considered the Complaint and the matters presented at the December 2, 1998 trial, and pursuant to Federal Rule of Civil Procedure 52 and Bankruptcy Rule 7052, now makes its

*Findings of Fact*

1. John Massey (the "Debtor") filed a petition under Chapter 7 on May 13, 1998.

2. Prior to the petition filing, the Debtor owned a house at 5342 Hawthorne Drive, Indianapolis, Indiana (the "Hawthorne Property"). The Debtor sometimes resided in the Hawthorne Property, and sometimes rented it to third parties, depending on whether the Debtor was posted overseas as part of his job for the Department of Defense. The Debtor contracted with a real estate company to manage the Hawthorne Property when the Debtor was absent from the country.

3. At some point in 1996 or 1997, the Debtor decided to build a new house, and to sell the Hawthorne Property. The Debtor planned to use his equity in the Hawthorne Property to help pay for the house to be constructed. The Debtor's real estate management company put the Hawthorne Property on the market, and in late March or early April of 1997, Mr. Davis became interested in purchasing the property. Mr. Davis attended a showing of the property during which he was given an opportunity to see both the exterior and the interior of the house, and liked the property well enough to make a full-price offer to purchase the property for $159,900. Mr. Davis tendered a $1,500 earnest money deposit (the "Earnest Money Deposit") to the Debtor's real estate agent. The Debtor accepted Mr. Davis' offer to purchase, by signing two different acceptances of the purchase agreement, one on April 1, 1997, and one on April 2, 1997.[1]

4. A few days after the offer to purchase was made by Mr. Davis and accepted by the Debtor, Mr. Davis had the Hawthorne Property inspected by a professional inspector. The inspector noted several items that needed immediate repair, or that would need repair in the near future. *See* Plaintiff's Exhibit 7. After reviewing the inspection report, Mr. Davis reduced his offer to purchase the Hawthorne Property by $25,000. The Debtor rejected Mr. Davis' offer to purchase for the lesser amount, and the property was eventually sold to a third party.

5. Once it became clear that the Debtor and Mr. Davis would not be going forward with the purchase transaction, Mr. Davis requested that the Debtor's real estate agent return the Earnest Money Deposit to Mr. Davis. The Debtor, preoccupied with selling the Hawthorne Property and with the construction of his new house, told his real estate agent to return the Earnest Money Deposit to Mr. Davis. According to the Debtor, given the various matters that he was dealing with at the time, it was not worth it to him to dispute the rightful ownership of the Earnest Money Deposit.

6. Although Mr. Davis repeatedly demanded the return of the Earnest Money Deposit over the next few months, the money was not returned to him by the Debtor's real estate agent. The Court heard no evidence from either party as to why the Debtor's real estate agent did not return the money to Mr. Davis. In June of 1997, Mr. Davis filed a complaint in state court against the Debtor (the "State Court Complaint"), alleging, *inter alia*, that the Debtor had converted the Earnest Money Deposit.

## COUNT III

### CONVERSION

21. The Davises hereby reincorporate and reallege the allegations made in Paragraphs 1 through 21 of the Complaint for Damages.

---

1. The parties dispute several aspects of the purchase transaction, including who caused the terms of the two agreements to differ, who caused the Earnest Money Deposit to not be immediately returned to Mr. Davis, the severity of the problems that were revealed when the Hawthorne Property was inspected, and the propriety of Mr. Davis' spouse acting as his real estate agent, without disclosing that fact to the Debtor. It is not necessary to resolve these issues, given the holding of the Court hereinbelow.

22. By failing and refusing to return the earnest money in accordance with the clear and unambiguous terms of the contract, Massey did exert, and continues to exert, unauthorized control over the Davises' funds within the meaning of I.C. 35–43 *et seq.*

23. Pursuant to I.C. 34–4–3 *et seq.*, the Davises are entitled to treble damages and reasonable attorney's fees.

Plaintiff's Exhibit 1.

7. The Debtor received notice of the filing of the State Court Complaint, and acting *pro se*, requested a jury trial, which request was denied. A hearing on the State Court Complaint was set for August 20, 1997. The Debtor did not appear at the August 20, 1997 hearing, and based on the Debtor's failure to appear, the state court entered a default judgment against the Debtor (the "Default Judgment"). The Default Judgment provides that the Debtor owes Mr. Davis $4,500, plus attorney fees, costs, and interest (the "Treble Damage Debt"):

That Defendant(s) has/have failed to appear; and Plaintiff is entitled to the relief prayed for in the Complaint;

. . . .

That judgment be rendered in favor of the Plaintiff and against the Defendant(s) for the sum of $4,500.00 + $1,272.00 atty fees, plus interest and costs.

. . . .

That Douglas Bryant as real estate agent for John Massey shall be ordered to release any of Jerry Davis's earnest monies under his control.

Plaintiff's Exhibit 2. Approximately six months after the entry of the Default Judgment, the Debtor, still acting *pro se*, filed a letter with the state court, asking that the state court reconsider its decision. The state court denied the Debtor's motion. *See* Plaintiff's Exhibit 3.

8. The day after the Default Judgment was entered by the state court, Mr. Davis tendered a copy of the Default Judgment to the Debtor's real estate agent. The real estate agent then gave the $1,500 Earnest Money Deposit to Mr. Davis.

9. As a former United Auto Workers member, Mr. Davis paid no money out of his pocket towards his attorney fees. The legal services provided to Mr. Davis were provided to him free of charge by the United Auto Workers Legal Services Plan.

Based on the foregoing Findings of Fact, the Court now makes its

*Conclusions of Law*

1. The Court has jurisdiction to hear this matter. 28 U.S.C. Section 1334, 28 U.S.C. Section 157.

2. Any of the foregoing Findings of Fact that are Conclusions of Law are hereby deemed to be Conclusions of Law, and any of the following Conclusions of Law that are Findings of Fact are hereby deemed to be Findings of Fact.

3. The issue before the Court is whether the Default Judgment should be given collateral estoppel effect as to the liability of the Debtor to Mr. Davis, and if not, whether Mr. Davis carried his burden of proof under 11 U.S.C. Section 523(a)(6).

4. Mr. Davis alleges that the Treble Damage Debt is non-dischargeable pursuant to Section 523(a)(6). Section 523(a)(6) provides as follows with respect to the dischargeability of debts for willful and malicious injury:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—

. . . .

(7) for willful and malicious injury by the debtor to another entity or to the property of another entity.

A creditor who alleges that a debt is non-dischargeable has the burden of proving non-dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

5. Mr. Davis' argument regarding the non-dischargeability of the Treble Damage Debt is two-fold. First, Mr. Davis argues that it is beyond dispute that the state court found that the Debtor committed an act of conversion. According to Mr. Davis, because the State Court Complaint alleges without ambiguity that the Debtor "converted" Mr.

Davis' property, and because the state court could not have awarded treble damages to Mr. Davis without finding that the Debtor committed an act of conversion, it cannot now be disputed that the state court found that the Debtor converted the Earnest Money Deposit. Secondly, Mr. Davis argues that collateral estoppel[2] prevents the Debtor from re-litigating here the issue of whether the Debtor converted the Earnest Money Deposit. Mr. Davis argues that collateral estoppel should be applied here, regardless of the fact that there was no trial on the merits in state court, because the Debtor was fully aware of the state court litigation, and could have appeared at the August 20, 1997 had the Debtor chosen to appear. To support his argument, Mr. Davis points to the fact that the Debtor received notice of the state court proceeding, that the Debtor requested a jury trial in the state court proceeding, and that the Debtor had the wherewithal to file a motion to set aside the Default Judgment, after the Debtor became aware that the Default Judgment had been entered against him.

■■■ 6. The Court turns first to the issues of res judicata and collateral estoppel. Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction. Because of the *exclusive*[3] jurisdiction of the bankruptcy court over issues of Section 523(a)(2), (4), (6), and (15) non-dischargeability, res judicata does not apply to actions pursuant to those subsections of Section 523(a). *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (holding that res judicata does not apply to those dischargeability issues with respect to which the bankruptcy court has exclusive jurisdiction).

■■■ 7. By contrast, the doctrine of collateral estoppel *does* apply in bankruptcy

proceedings, where there has been a prior proceeding in another court. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Four requirements must be met in order to apply collateral estoppel in the bankruptcy context:

1) the issue sought to be precluded must be the same as that involved in the prior action,

2) the issue must have been actually litigated,

3) the determination of the issue must have been essential to the final judgment, and

4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Jones v. Indiana Finance Co.,* 180 B.R. 531, 532–533 (S.D.Ind.1994) (quoting *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program,* 20 F.3d 289, 293–294 (7th Cir.1994)).

8. Here the prior state court judgment was a default judgment. Accordingly, the Court must decide whether the issue to be precluded, *i.e.,* the Debtor's alleged conversion, was "actually litigated" in the state court proceeding. Almost all courts hold that where there is a "true default", *i.e.,* the debtor made no appearance whatsoever in the prior proceeding, collateral estoppel should not be applied. *See, e.g., Matter of McMillan,* 579 F.2d 289, 292 (3rd Cir.1978); *Jones v. Indiana Finance Co.,* 180 B.R. 531 (S.D.Ind.1994); *In re Dempster,* 182 B.R. 790 (Bankr.N.D.Ill.1995). *But see In re Nourbakhsh,* 67 F.3d 798 (9th Cir.1995) (applying full faith and credit, and finding that because Florida law considers a default judgment to be a judgment on the merits, collateral estoppel effect should be given to prior default judgment by Florida court).

---

**2.** At one point during the December 2, 1998 trial, counsel for Mr. Davis stated that res judicata (as opposed to collateral estoppel) prevents the Debtor from re-litigating any issues previously decided by the state court. Given that res judicata does not apply to dischargeability proceedings pursuant to Sections 523(a)(6), *see* Conclusion of Law 5 hereinbelow, the Court will assume that counsel for Mr. Davis meant to argue that collateral estoppel prevents the Debtor from re-litigat-

ing any issues previously decided by the state court.

**3.** *See* 11 U.S.C. Section 523(c). Bankruptcy courts have concurrent jurisdiction with state courts over the other types of non-dischargeability, *i.e.,* those described in subsections 523(a)(1), (3), (5), (7) through (14), and (16) through (18).

9. Where the party to be estopped did not appear at the trial on the merits, but did make other appearances in the action, many courts still refuse to apply collateral estoppel. *See, e.g., In re Pancake*, 106 F.3d 1242 (5th Cir.1997) (collateral estoppel not applied, where debtor's answer was struck as a discovery sanction, state court entered a default judgment on a motion for summary judgment, no evidence was presented to the bankruptcy court that the state court took testimony from witnesses, and state court merely stated that it heard "the evidence and arguments of counsel"); *In re Raynor*, 922 F.2d 1146 (4th Cir.1991) (collateral estoppel not applied, where debtor was at first represented by counsel, counsel withdrew on day of trial, debtor did not appear at trial, default judgment was entered, and debtor filed unsuccessful motion to overturn default judgment).

10. On balance, the Court concludes that collateral estoppel should not be applied in the circumstances of this case. The Court does not believe that "knowing of the proceeding", "requesting a jury trial", and "filing a motion to set aside the Default Judgment", satisfies the requirement that the matter in issue must have been "actually litigated".

11. The Court turns to the issue of the dischargeability of the Treble Damage Debt. Having concluded that collateral estoppel should not be applied in the circumstances of this case, the Court will proceed with its analysis without reference to the existence of the Default Judgment, and without reference to the findings therein.

12. Section 523(a)(6) provides that a debt is non-dischargeable where it is a debt for a "willful and malicious" injury to the property of another person. The United States Supreme Court recently examined the "intent" element of Section 523(a)(6), and held in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), that only "intentional" torts are within the Section 523(a)(6) exception to discharge. The Supreme Court held that to qualify as "intentional", the actor must have intended the consequences of his act, not simply the act itself. *Kawaauhau*, 523 U.S. 57, 118 S.Ct. at

976. Applying the *Kawaauhau* ruling to the facts of this case, the Court finds that the Debtor did not intend to cause injury (*i.e.*, the withholding of the Earnest Money Deposit) to Mr. Davis. The Court finds credible the Debtor's testimony that he told his real estate agent to return the Earnest Money Deposit to Mr. Davis.

13. The United States Supreme Court has cautioned against the adoption of an overly-broad definition of the "intent" element of Section 523(a)(6), and has specifically stated that a "knowing" breach of contract does not satisfy the intent element of Section 523(a)(6). In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Kawaauhau's were plaintiffs who had been injured by the negligent malpractice of a physician. The Kawaauhau's were arguing for a broad interpretation of "willful and malicious" that would include negligent acts, as well as intentional acts.

> The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description. See [*In re Geiger*] 113 F.3d [848], at 852 [(1997)]. *A 'knowing breach of contract' could also qualify.* See ibid. A construction so broad would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.' *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

*Kawaauhau*, 523 U.S. 57, 118 S.Ct. at 977 (emphasis added).

14. The Court notes that the damages that Mr. Davis has suffered, if any, are limited. As set out hereinabove, the Court gives no effect to the Default Judgment, and the treble damages awarded therein. Mr. Davis got his $1,500 back, and paid no out-of-pocket fees for his legal representation. Mr. Davis

had to expend some time in pursuing the state court litigation, but that was time spent in litigation that if fully litigated, might have been decided in favor of the Debtor, rather than in favor of Mr. Davis.

15. Having reviewed the evidence as a whole, and particularly the testimony of the parties, it is the conclusion of the Court that Mr. Davis has not met his burden of proof with respect to the intent element of Section 523(a)(6). The Court accordingly holds that the Treble Damage Debt is not non-dischargeable under Section 523(a)(6).

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Complaint be, and hereby is, DENIED. The debt owed by John Massey to Jerry Davis, in the amount of $4,500 plus attorney fees, interest, and costs, is hereby DEEMED to be dischargeable.