In re Nicholas J. GONZALEZ, Debtor.

Julianne Charell, Plaintiff,

v.

Nicholas J. Gonzalez, Defendant.

Bankruptcy No. 99B40524(TLB).
Adversary No. 99/8468A(TLB).

United States District Court,
S.D. New York.

Nov. 18, 1999.

Lacher & Fox, LLP, by Joseph L. Fox, New York City, for Julianne Charell.

Weltman & Moskowitz, LLP, by Michael L. Moskowitz, Christopher Alliotts, New York City, for Nicholas J. Gonzalez.

## DECISION DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

TINA L. BROZMAN, Chief Judge.

### *Introduction*

Nicholas J. Gonzalez (the "Debtor"), a physician specializing in unconventional methods of treating cancer, filed for chapter 11 protection following entry of a state court judgment against him by plaintiff Julianne Charell ("Charell") arising from his post-surgical treatment of her for uterine cancer. The judgment, which was entered following a jury verdict, awarded over $4 million in compensatory damages and $150,000 in punitive damages. The jury's award of punitive damages was reversed on appeal. Because the coverage limits under the Debtor's malpractice policy were insufficient to satisfy Charell's judgment in full, Charell filed a proof of claim against the Debtor's bankruptcy estate for the approximately $1 million difference. Notwithstanding the reversal of the punitive damage award, Charell commenced this adversary proceeding to have her claim declared nondischargeable on the basis of fraud under section 523(a)(2)(A) of the Bankruptcy Code.

### *I.*

Following Charell's surgery for uterine cancer, her surgeon had recommended a standard post-surgical protocol involving radiation and chemotherapy. Desirous of avoiding the side effects of chemotherapy, Charell sought the Debtor's professional opinion regarding alternative methods of treating cancer. Charell agreed to utilize the Debtor's protocol, which consisted primarily of nutritional therapy, instead of using radiation or chemotherapy as her surgeon had recommended. After Charell's cancer recurred, she commenced an action in state court against the Debtor alleging claims for medical malpractice, criminal negligence and failure to obtain informed consent. As previously mentioned, Charell also sought punitive damages, the jury's award of which was reversed on appeal. Although Charell did not assert a cause of action for fraud, most likely because it would have jeopardized the Debtor's insurance coverage, in her verified bill of particulars she stated that the Debtor provided her with fraudulent advice regarding his cancer treatment. In response to the question posed by the judge in the special verdict form "Would a reasonably prudent person in plaintiff's position at the time have agreed to have the treatment offered by defendant?", the jury unanimously responded in the negative. Curiously, however, the jury subsequently unanimously responded in the affirmative that Charell, by accepting the Debtor's treatment, impliedly assumed 49% of the risk of injury to herself.

Prior to submission of Charell's case to the jury, the court had read the charge to the jury. Although the charge to the jury neither included the law on fraud nor instructed the jurors to make any findings of fact with respect to fraud, the Debtor argues that because the same factual showings must be made for the "wanton and reckless indifference" which is the underpinning for the imposition of punitive damages and for "fraudulent intent," the jury had, in effect, made a finding of fact with respect to the Debtor's fraudulent intent, precluding Charell from raising this claim in her non-dischargeability action under the doctrine of collateral estoppel. Alternatively, the Debtor contends that because Charell could have raised her fraud claim as part of the state court action, she is precluded from doing so now under the

principles of *res judicata*. In response, Charell maintains that the doctrines of issue preclusion and claim preclusion are inapplicable here because she did not plead a cause of action based on fraud, no proof was presented to the jury on the theory of fraud, the jury was not instructed on the elements of fraud, and the jury did not render a verdict finding the Debtor liable on the basis of fraud. In addition, Charell maintains, there are different types of fraud—fraud in the inducement, fraud in medical testing, fraudulent information given to Charell and misrepresentations in the Debtor's research—none of which was alleged in Charell's complaint nor included as part of the judge's charge to the jury.

## II.

Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is appropriate only where it appears that a plaintiff can prove no set of facts upon which relief may be granted. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir.1995); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994). All well-pleaded factual allegations contained in the complaint are to be taken as true, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Acito*, 47 F.3d at 51; *Shields*, 25 F.3d at 1127, and construed in the light most favorable to the plaintiff. *See LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Eisenberg v. Feiner (In re Ahead By a Length, Inc.)*, 100 B.R. 157, 162 (Bankr.S.D.N.Y.1989) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). However, courts are free to disregard legal conclusions, deductions or opinions couched as factual allegations. *See* 5 A.C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 311–18 (2d ed.1990); 2 Coquillette, MOORE'S FEDERAL PRACTICE 3d, § 12.34[1][b], at 12–61 10 12–62 (3d ed.1998)[1].

In addition to the factual allegations in the complaint, the court may consider the contents of any documents attached to the complaint or incorporated therein by reference, matters as to which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relief upon in bringing suit. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Nisselson v. Drew Industries, Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 422 (Bankr.S.D.N.Y.1998); *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs., Inc.)*, 162 B.R. 426, 430 (Bankr.S.D.N.Y. 1993). The issue is not whether Charell has offered evidence to support her claims, but whether under the principles of *res judicata* and collateral estoppel, Charell is precluded, as a matter of law, from seeking to deny dischargeability of the Debtor's debt under Section 523(a)(2)(A) for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud ...". 11 U.S.C. § 523(a)(2)(A).

To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient. 4 L. King, COLLIER ON BANKRUPTCY, § 523.08[1][d] at 523–43 (15th ed. rev. 1999). To exempt a debt from discharge under Section 523(a)(2)(A), the non-debtor's reliance must be "justifiable" under the circumstances. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). To sustain a *prima facie* case under Section 523(a)(2)(A) of the Bankruptcy Code, a creditor must establish the traditional elements of common law fraud: (1) the debtor made a false representation;

---

1. Although the Debtor seeks to dismiss Charell's complaint for failure to state a claim under Bankruptcy Rule 7012(b), the standard to be applied to determine if this relief should be granted is the same as if this relief were sought under Fed.R.Civ.P. 12(b)(6).

(2) the debtor knew the representation was false at the time it was made; (3) the representation was made with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result. *See In re Bilzerian,* 153 F.3d 1278, 1281 (11th Cir.1998); *Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir.1997); *In re Alicea,* 230 B.R. 492, 500 (Bankr.S.D.N.Y. 1999). We will first turn to the issue of whether Charell is barred from litigating her fraud claim under the principles of *res judicata.*

*Res judicata,* or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction. *See Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir.1999) (" 'Under the doctrine of claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' ") (quotation omitted). "[O]nce a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the 'transaction, or series of connected transactions, out of which the [first] action arose.' " *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997) (quoting RESTATEMENT (SECOND) OF JUDGMENTS, § 24(1) (1982)). *See also* 73 N.Y.Jur.2d, JUDGMENTS § 320 (1988) ("The doctrine of *res judicata* ... is that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.").

The Debtor argues that Charell is precluded under the principles of *res judicata* from proceeding with her nondischargeability claim under Section 523(a)(2) because she could .have raised her fraud claim in the state court proceeding. However, because the bankruptcy court has exclusive rather than concurrent jurisdiction with the state courts over issues of Section 523(a)(2), (4), (6), and (15) nondischargeability[2] pursuant to Section 523(c) of the Bankruptcy Code and in keeping with the holding of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), *res judicata* is not available to bar Charell from now proving that her debt was fraudulently incurred. *Accord Levinson v. United States,* 969 F.2d 260 (7th Cir.1992), *cert. denied,* 506 U.S. 989, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992); *In re Massey,* 228 B.R. 686, 690 (Bankr.S.D.Ind.1998); *cf. RTC v. McKendry (In re McKendry),* 40 F.3d 331 (10th Cir.1994) (circuit court reversing bankruptcy court's dismissal of dischargeability proceeding as barred by state statute of limitations for fraud and concluding that federal 60–day statute of limitations controlled under rationale of *Brown v. Felsen*).

In *Brown,* a creditor brought a collection suit against the debtor alleging fraud. The two settled, not specifying the grounds on which liability was acknowledged, and judgment was entered. Thereafter, the debtor filed a bankruptcy petition and sought to have the judgment discharged. The bankruptcy court determined that the state court judgment was *res judicata* and refused to consider extrinsic evidence of fraud, confining the record to what was before the state court. The intermediate appellate courts affirmed. The Supreme Court, however, reversed, reasoning that to apply *res judicata* would serve neither the interests un-

---

**2.** The bankruptcy court or the state or other nonbankruptcy court may exercise concurrent jurisdiction for all the other exceptions to discharge enumerated in section 523(a) of the Bankruptcy Code. 4 L. King, COLLIER ON BANKRUPTCY, ¶ 523.03, at 523–17 (15th ed. rev. 1999).

derlying the doctrine itself nor the policies at the core of the bankruptcy laws. It emphasized that the subsequent filing of bankruptcy by the debtor and the setting up of his discharge as a defense to a valid judgment disturb the repose in which judgments are ordinarily found such that the bar of the judgment should not be imposed on the creditor. To rule otherwise, the Court noted, would be to force creditors to anticipate hypothetical bankruptcy filings and to pursue all potential claims relevant to discharge of debt in addition to those necessary to establish liability, frequently entailing needless extra litigation. Moreover, the court reasoned, enforcing *res judicata* would undercut the exclusive jurisdiction given to the bankruptcy court over certain types of dischargeability actions, including those for fraud.

That rationale obtains here. Accordingly, the Debtor's motion to dismiss Charell's Section 523(a)(2) nondischargeability complaint on the grounds of *res judicata* is denied. We will thus turn to the issue of whether Charell's complaint may be dismissed on the grounds of collateral estoppel.

■ Unlike for *res judicata*, the principle of collateral estoppel or issue preclusion does apply in bankruptcy proceedings and can be used in nondischargeability actions to preclude the re-litigation of issues already decided by another court. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred." *State of New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir.1997) (citations omitted).

■ Under New York law, collateral estoppel may be invoked where there is (1) an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) a full and fair opportunity to contest the decision

claimed to be controlling. *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985). "Collateral estoppel or 'issue preclusion' is invoked when the cause of action in the second proceeding is different from that in the first and applies to a prior determination of an issue which was actually and necessarily decided in the earlier decision; it is confined to the point actually determined and applies only to issues which are actually litigated, not to those which could have been litigated." 73 N.Y.Jur.2d, JUDGMENTS § 321 (1988).

■ Whereas Charell did not sue the Debtor for fraud, in her verified bill of particulars she repeatedly referred to his fraudulent conduct and she sought punitive damages from him. Evidence in support of the requested damages was placed before the jury. Specifically, the jury learned that the Debtor dissuaded Charell from having chemotherapy or radiation, advising her to follow his special diet and not "mess" with chemotherapy; that he stated that he had experienced a 75% success rate with persons in her condition; that he told her tests of her hair showed first that she had cancer remaining, despite what her physicians at Mt. Sinai Hospital had told her, and that later tests after she had begun treatment with him showed a reduction in her cancer cells; that she was never told by the Debtor that he was not an oncologist, nor that his protocol was experimental and not generally accepted in the medical community; and that the Debtor's practice of prescribing nutrition as a cure was designed to enable companies in which he had a financial interest to sell product. *Charell v. Gonzalez*, 173 Misc.2d 227, 660 N.Y.S.2d 665, 666, 669 (N.Y.Sup.Ct.1997). As the trial judge explained in a post-judgment ruling, "[w]hile there was evidence offered by the defendant to the contrary, the jury was entitled to find that defendant's intent in dealing with plaintiff was motivated by greed and that he was reckless in his care of her." *Id.* at 669.

When the trial judge charged the jury, he explained to them the burden of proof—a fair preponderance of the credible evidence—and also instructed them that they could award punitive damages "if you find that the acts of the defendant that caused [Charell's] injury in this case was wanton, reckless or malicious.... An act is wanton and reckless when it is done in such a way, under such circumstances as to show conscious indifference of others and disregard upon the effects and safety of the rights of others. Here, in one's patients. An act is malicious when it is done deliberately and with knowledge of plaintiff's rights and with intent to interfere with these rights as a party or a patient."

The jury returned a verdict in favor of Charell, awarding punitive damages as well. On appeal, the Appellate Division affirmed the finding of liability but reversed the jury's award of punitive damages as a matter of law, holding that the Debtor's "conduct was not so wantonly dishonest, grossly indifferent to patient care, or so malicious and/or reckless as to warrant such an award." *Charell v. Gonzalez*, 251 A.D.2d 72, 673 N.Y.S.2d 685, 687 (1998). Based on this determination, the Debtor argues that Charell is collaterally estopped from proving that her indebtedness is grounded in fraud.

 To except a debt from discharge because it was incurred by false pretenses or false representations, the false representations giving rise to the debt must have been knowingly and fraudulently made, *see Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7 (1st Cir.1994); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958 (6th Cir.1993), although reckless representations or silence regarding a material fact may in some cases be sufficient to constitute the requisite falsity. *Coman v. Phillips (In re Phillips)*, 804 F.2d 930 (6th Cir.1986); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285 (8th Cir.1987); *In re Weinstein*, 31 B.R. 804 (Bankr.E.D.N.Y.1983)

(citing *Lloyd v. Industrial Bank of Commerce*, 241 F.2d 924 (2d Cir.1957)). Similarly, to except a debt from discharge because it was incurred through actual fraud, the debtor must have made a misrepresentation which he knew to be false and by which he intended to deceive the plaintiff. *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340 (8th Cir.1987); *In re Perez*, 155 B.R. 844 (Bankr.E.D.N.Y.1993).

Here, it has been determined as a matter of law that Charell tried but failed to prove that the Debtor's conduct was wanton, reckless or malicious. What has not been tried and determined, however, is whether the Debtor knowingly made any misrepresentations. Under the formulation for the imposition of punitive damages, the Debtor could have been guilty of a knowing misrepresentation without that conduct being sufficiently wanton or malicious that it would lead to the imposition of punitive damages. Predicting that such a point might be raised, the Debtor's counsel argued in his reply memorandum of law that fraud itself can support an award of punitive damages. Whatever the merit of that proposition, it is beside the point, because the jury was not charged with deciding whether there had been a knowing misrepresentation of fact and, thus, the issues raised were not identical and the issue of fraud was never decided, either by the jury or by the appellate court, as a result of which collateral estoppel does not apply. *Cf. In re Tobman*, 107 B.R. 20 (S.D.N.Y. 1989) (reversing bankruptcy court's finding of nondischargeability by way of collateral estoppel where record was unclear whether misstatements underlying fraud in the inducement found by jury were sufficient to sustain particular grounds for nondischargeability, district court determining that it was not "actually decided" in prior proceeding whether debtor had committed fraud cognizable in dischargeability proceedings). Accordingly, the Debtor's motion to dismiss Charell's complaint on the grounds of collateral estoppel is denied.

The Debtor also argues that the doctrines of judicial estoppel and waiver should be applied to bar Charell from proceeding with her nondischargeability complaint. "Judicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding only when (1) that party advanced a clearly inconsistent position in a prior proceeding and (2) that inconsistent position was adopted by the court in some manner." *Kunica v. St. Jean Financial, Inc.,* 233 B.R. 46, 57 (S.D.N.Y.1999) (citing *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (2d Cir. 1997)) (internal citations omitted). Waiver has been defined as "an intentional relinquishment of a known right or privilege." *In re Westchester Tank Fabricators, Ltd.,* 207 B.R. 391, 399 (Bankr.E.D.N.Y.1997). It " 'requires (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit.' Waiver may be express, or as is argued here, implied from conduct of a party which is 'so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary.' " *Id.* at 399–400 (quotations omitted). The burden is on the Debtor to prove the facts supporting his assertions of waiver and judicial estoppel. *Id.* at 400. The facts alleged in support of a waiver must be "clear, unmistakable and without ambiguity." *Id.* at 400 (quotation omitted). There is nothing in this record from which to conclude that Charell abandoned or otherwise waived her claim for fraud by not asserting it in the state court action. Just as a plaintiff seeking to establish a debt may wish to refrain from asserting a fraud claim when the defendant is solvent, *see Brown v. Felsen,* 442 U.S. 127, 137 n. 8, 99 S.Ct. 2205, 60 L.Ed.2d 767, a plaintiff possessing a malpractice claim may also desire to avoid a fraud trial for fear of risking insurance coverage and pushing the defendant into insolvency. *See In re Gross,* 654 F.2d 602 (9th Cir.1981) (relying on *Brown v. Felsen,* the court rejected the debtor's argument that plaintiff/creditor should be precluded from raising the question of fraud in a dischargeability proceeding in bankruptcy court because he had elected his remedy to obtain a prior state court judgment against the debtor on contract grounds). By the same token, there is nothing inconsistent between the positions adopted in the prior litigation and in the nondischargeability one such that judicial estoppel could be invoked. The decision to forego pursuing a possible fraud claim cannot in the dischargeability context constitute a waiver or an inconsistent position before a second court, for, as *Brown v. Felsen* explained, the determination to later seek a declaration of fraud is made in response to the debtor's setting up of his bankruptcy discharge as a defense; it is not a new ground for recovery or an attack on the validity of the prior judgment. 442 U.S. at 133, 99 S.Ct. 2205.

The Debtor also argues that as a matter of public policy Charell should not be permitted to recharacterize her nondischargeability action as a Section 523(a)(2) instead of a Section 523(a)(6) proceeding. Charell does not seek to bar the discharge of the Debtor's debt for a malicious and willful injury, but rather on the theory that the Debtor rendered services to Charell as a result of false representations, false pretenses and/or actual fraud. Professional services, such as those of a physician, come within the scope of Section 523(a)(2). 4 L. King, Collier on Bankruptcy, § 523.08[1][c], at 523–42. Accordingly, the Debtor's motion is denied.

SETTLE ORDER consistent with this decision.