Vikramchandra MAHARAJ, derivatively on behalf of InterQuant Capital Advisors, Ltd., and individually, Plaintiff–Appellant,

v.

BANKAMERICA CORP.; Bank of America National Trust and Savings Association; Security Pacific National Bank; Security Pacific Investment Group, Inc.; Bofa Capital Management Inc.; Robert H. Smith; Edward G. Hartman; J. Michael Gaffney; Arthur A. Fritz; Ann Y. Lau; Richard G. Wimbish; Christopher R. Helton; Katherine Wolking; Defendants–Appellees.

Interquant Capital Advisors, Ltd., Nominal Defendant.

No. 1265, Docket 96–7021.

United States Court of Appeals, Second Circuit.

Argued May 8, 1997.

Decided Oct. 17, 1997.

Bernard Persky, New York City (Jonathan Gardner, Goodkind Labaton Rudoff & Sucharow LLP, New York City, of counsel), for Plaintiff–Appellant.

David B. Chenkin, New York City (John M. Wilson, Zeichner Ellman & Krause, New York City, of counsel), for Defendants–Appellees.

Before: FEINBERG, CARDAMONE, and LEVAL, Circuit Judges.

CARDAMONE, Circuit Judge:

Full of high expectations for success, plaintiff and defendants together formed a new business venture in which defendants took a majority stake and plaintiffs assumed managerial responsibility. Later, defendants determined to end the relationship and wind up the business. The reason advanced for terminating plaintiff was not, as one might expect, because of disappointed business expectations; but, rather because of plaintiff's alleged violation of defendants' personal code of conduct. The consequences of defendants' strong reaction to what they perceived to be plaintiff's personal misconduct reinforces the notion that passion conquers reason. That such proved to be the case here is reflected in plaintiff's favorable jury verdict in the breach of employment contract suit he brought against defendants.

Plaintiff Vikramchandra Maharaj appeals from a December 1, 1995 judgment of the United States District Court for the Southern District of New York (Cote, J.), dismissing his complaint. The district court ruled plaintiff's individual claims were barred by *res judicata* and that he was precluded from asserting derivative claims on behalf of InterQuant Capital Advisors, Ltd. under the doctrine of judicial estoppel. Plaintiff challenges both rulings on appeal.

## BACKGROUND

Maharaj's complaint tells the following tale. In December 1987 he and defendant Security Pacific National Bank (Security Pacific or the Bank), founded a Delaware corporation named InterQuant Capital Advisors, Ltd. (InterQuant). InterQuant was formed for the purpose of providing investment advice using quantitative methods and proprietary software Maharaj had developed. The Bank provided 80 percent of the initial equity, and Maharaj contributed 20 percent. Maharaj was elected as a director and named President and Chief Executive Officer of the newly formed company pursuant to a five-year employment agreement. Maharaj and Security Pacific also signed a stockholders' agreement, which stated that in the event Maharaj's employment by InterQuant was terminated for any reason, InterQuant, the Bank, or certain of InterQuant's employees would have the option to buy Maharaj's shares.

In October 1989 defendant Security Pacific Investment Group, to which the Bank had transferred its interest in InterQuant, informed Maharaj that his employment was terminated as of October 4, 1989, purportedly for failing to abide by Security Pacific's code of conduct. On October 18 the InterQuant board, from which Maharaj had been removed following his firing, adopted a resolution stating that plaintiff's shares of InterQuant stock were worth $0. Notwithstanding

the repurchase option contained in the stockholders' agreement, at no time did InterQuant, Security Pacific, or any of InterQuant's employees offer to redeem or purchase plaintiff's shares.

Shortly after dismissing Maharaj, the defendants caused InterQuant to transfer all its assets to another corporation they owned named InterCash Capital Advisors, Inc. (InterCash). InterCash, using assets obtained from InterQuant and strategies and software InterQuant had developed, then proceeded to exploit business opportunities InterQuant had uncovered, deriving substantial revenue. InterQuant ceased operations, although it still remained in existence.

In August 1990 Maharaj commenced an action (*Maharaj I*) in the United States District Court for the Southern District of New York (Sweet, J.), seeking damages in his individual capacity from Security Pacific, Security Pacific Investment Group, InterQuant, and certain of their employees for (a) breaching his employment agreement when they terminated him without cause and (b) breaching their fiduciary duty to him as a minority stockholder by firing him on a pretext in an attempt to trigger the repurchase of his shares. The case proceeded to trial before a jury that returned a verdict in Maharaj's favor on the breach of employment cause of action, awarding him $390,000. The jury rejected plaintiff's breach of fiduciary duty claim.

In March 1993 after the complaint in the prior action had been filed, but before the case had gone to trial, defendants dissolved InterQuant by filing a certificate of dissolution with the State of Delaware. The certificate falsely stated that the dissolution had been approved by InterQuant's "sole" shareholder. Maharaj, who at that time was also a shareholder of InterQuant, was not given notice of the dissolution, and avers he did not learn of it until well after the conclusion of the first trial.

Plaintiff filed the present complaint in October 1994 alleging three individual causes of action: failure to give notice of dissolution of the corporation, conversion, and breach of the stockholders' agreement; and, on behalf of InterQuant, two derivative causes of action: demand for an accounting and breach of fiduciary duty.

Defendants moved pursuant to Rules 12(b), 23.1 and 9(b) of the Federal Rules of Civil Procedure to dismiss the plaintiff's complaint arguing that (i) the individual claims were barred by *res judicata,* (ii) plaintiff's claims to be a shareholder for purposes of the derivative claims should be judicially estopped, (iii) the failure to plead a valid reason for not making a Rule 23.1 demand on InterQuant's board of directors prior to bringing a derivative action barred such suit, (iv) the complaint failed to allege fraud with sufficient particularity to meet the requirements of Rule 9(b), (v) plaintiff's contention of entitlement to notice of dissolution under Delaware law was not viable because he was powerless to block that dissolution, and (vi) the derivative claims and conversion claims were time-barred.

The district court concluded that plaintiff's individual claims for conversion, wrongful dissolution and breach of stockholders' agreement were barred by the doctrine of *res judicata* because they could have been raised in *Maharaj I.* It further determined that although the derivative claims were timely brought, plaintiff was judicially estopped from claiming to be a shareholder for purposes of asserting them because portions of the jury instructions in *Maharaj I* appeared to suggest that he had taken a contrary position in the prior action. Finding adequate grounds to dismiss the complaint based on *res judicata* and judicial estoppel, the district court dismissed the complaint without addressing defendants' remaining arguments.

Maharaj appeals the dismissal of his complaint challenging both rulings. We reverse.

## ANALYSIS

### I *Res Judicata*

■ We review the district court's dismissal of plaintiff's complaint for failure to state a cause of action *de novo,* and in so doing accept as true all of the factual allegations contained in it. Plaintiff first urges that the doctrine of *res judicata* should not

be used to bar his individual causes of action for conversion, wrongful dissolution, and breach of the stockholders' agreement because each of these causes arose from events that occurred subsequent to the filing of the complaint in *Maharaj I*.

We begin by noting that the judgment in *Maharaj I* was rendered by a federal court sitting in diversity jurisdiction and that it is not altogether clear which law—state or federal—determines the effect of a judgment rendered in a diversity case on a subsequent diversity action. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 n. 1 (2d Cir.1995); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 n. 3 (2d Cir.1986). In *Gelb*, we suggested that because state law controls the *res judicata* effect of state court judgments, federal courts should perhaps have similar power to determine the effect of federal judgments. *Id.* Thus far, however, we have not definitively resolved this issue, and we decline to do so on this appeal because federal and New York principles of *res judicata* and judicial estoppel lead here to the same result. *See Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 373 (2d Cir.1992); *Chase Manhattan Bank*, 56 F.3d at 345 n. 1.

■ Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). Simply put, the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning "the transaction, or series of connected transactions, out of which the [first] action arose." *Restatement (Second) of Judgments* § 24(1) (1982).

■ In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive. *S.E.C. v. First Jersey*

*Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir.1996). Rather, the first judgment will preclude a second suit only when it involves the same "transaction" or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first. *Id.* at 1464; *see also Nevada v. United States*, 463 U.S. 110, 128–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983) (requiring courts to first decide whether the "same cause of action" is being sued upon).

■ Thus, as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play. *First Jersey*, 101 F.3d at 1464. Accordingly, if, after the first suit is underway, a defendant engages in actionable conduct, plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct. Plaintiff's failure to supplement the pleadings of his already commenced lawsuit will not result in a *res judicata* bar when he alleges defendant's later conduct as a cause of action in a second suit. *See id.* New York law is the same. *See Cohen v. Board of Educ. of East Ramapo Cent. School Dist.*, 84 A.D.2d 536, 537, 443 N.Y.S.2d 170 (2d Dep't 1981) (*res judicata* will not bar lawsuit "based upon events which occurred subsequent to the commencement of the prior proceeding").

Maharaj maintains that the district court ignored these principles and should not have applied the *res judicata* doctrine to his causes because each of them arose out of an event—the dissolution of InterQuant—that occurred more than two and onehalf years after the filing of the complaint in *Maharaj I*. The first of plaintiff's individual claims, for damages resulting from defendants' failure to give him the notice of dissolution required by Delaware corporate law, plainly could not have been brought prior to InterQuant's dissolution. Likewise, plaintiff's second claim for relief, asserting that defendants' dissolution of InterQuant amounted to a breach of the stockholders' agreement, centers upon the dissolution of the corporation. Because

these claims arise out of InterQuant's dissolution—an event that occurred after the filing of the complaint in *Maharaj I*—they are not barred by *res judicata*.

Similarly, plaintiff's individual claim for conversion of his shares should not be barred either because that cause of action became viable only upon the dissolution of the corporation. Prior to dissolution, plaintiff's shares were still outstanding, and the most he could claim was that defendants' actions had harmed the corporation and thereby led to a diminution in the value of his shares. But, such pre-dissolution conduct would not support a claim for conversion. *See Niles v. New York Cent. & Hudson River R.R. Co.*, 176 N.Y. 119, 123–24, 68 N.E. 142 (1903) (stockholder has no individual claim for harm to corporation which diminishes value of his shares); *All States Warehousing, Inc. v. Mammoth Storage Warehouses, Inc.*, 7 A.D.2d 714, 180 N.Y.S.2d 118 (1st Dep't 1958) (per curiam) (same).

After the dissolution, however, the value of plaintiff's shares was effectively reduced to zero, and to the extent the dissolution was unlawful, plaintiff could bring an action for the conversion of his shares. *See Nelson v. All Am. Life & Fin. Corp.*, 889 F.2d 141, 147–48 (8th Cir.1989) (unlawful change in corporate structure resulting in cancellation of shares may support claim of conversion). Because plaintiff's conversion suit arose out of the dissolution of InterQuant, after the commencement of the prior litigation, it also is not barred by *res judicata*. As a consequence, plaintiff's individual causes of action for InterQuant's wrongful dissolution, conversion and breach of the stockholders' agreement should not have been dismissed on *res judicata* grounds.

## II Judicial Estoppel

█ The second issue raised on appeal is whether the district court properly dismissed Maharaj's derivative claims on the basis of judicial estoppel. Judicial estoppel prevents a party who secured a judgment in his favor by virtue of assuming a given position in a prior legal proceeding from assuming an inconsistent position in a later action. One of the rationales that supports the existence of this doctrine is to preclude the risk of inconsistent results in separate legal proceedings; its aim, in other words, is to protect "the integrity of the judicial process." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.1993).

█ Hence, judicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner, *Bates*, 997 F.2d at 1038, perhaps, for example, by obtaining a judgment. *Cf. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990). When any of these elements are missing, judicial estoppel does not apply.

Applying the doctrine to the case at hand, the district court reasoned that the plaintiff was judicially estopped from claiming to be an InterQuant shareholder, and that absent such an assertion, he could not bring derivative claims on the corporation's behalf. The court thought judicial estoppel was appropriate for two reasons. First, because Maharaj's fiduciary duty cause of action in his prior suit was based on an assertion that the defendants had deprived him of his shares in InterQuant, and second, the trial court's recitation of Maharaj's fiduciary duty claims in its jury instructions during the earlier trial amounted to a judicial adoption of the theory that Maharaj had been deprived of his shares.

Maharaj responds to this reasoning by declaring that judicial estoppel should not bar him from asserting that he is a shareholder because he did not win a judgment as a result of the allegedly inconsistent statements made in support of his failed fiduciary duty claim, and because his prior and present positions are not truly inconsistent. Because we agree with plaintiff's latter contention we need not discuss the former.

We are persuaded there is no clear inconsistency between plaintiff's present and former positions. Contrary to the district court's statements, it is far from evident that plaintiff ever denied being an InterQuant shareholder. Close examination of the rec-

ord in the prior action reveals that although he insisted his firing was part of a scheme to *trigger* the option to repurchase his shares, he has at all times maintained that the defendants failed to *exercise* that option.

In short, plaintiff's theory in the prior action was not that he had been deprived of his *shares* in InterQuant, but that he had been deprived of his entitlements as a shareholder. Because plaintiff's prior assertions are not clearly inconsistent with the assertion that he remained an InterQuant shareholder until the dissolution of the corporation, it was inappropriate to rely on inconsistency as a reason for applying judicial estoppel to bar plaintiff from maintaining his derivative claims.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the matter for further proceedings before it. In so doing, we express no view upon the adequacy of the complaint's allegations of demand futility under Rule 23.1, which subject may be addressed in the first instance to the district court.