Joseph BOLOGNA, individually, and d/b/a U.S.A. Development, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Sears Roebuck & Co., Pro–Tech Construction, Inc., John Varanelli, Lucille Varanelli, Feldman & Rudy, P.C., Brian Rudy, Hoffman Construction Company, Robert Hoffman, Philip Genova, George Loue, Dennis Meehan, Anne Inguanti, James North, Gary Pace, and All Quality Vendor Program Members, the name being fictitious to account for all known and unknown Quality Vendor Program members from January 1, 1992 to December 31, 1997, Defendants.

No. CV 98–5767(ADS).

United States District Court, E.D. New York.

March 20, 2001.

Joseph Bologna, Cape Coral, Florida, plaintiff pro se.

Rivkin Radler & Kremer, LLP, Uniondale, New York City, by Frank J. Giliberti, for defendants Allstate Insurance Company, Philip Genova, George Loue, Dennis Meehan, Anne Iguanti, and Gary Pace.

Novack, Burnbaum & Crystal, LLP, New York City, by Howard C. Crystal, of counsel, for defendants Sears, Roebuck and Co., and James North.

Somer & Heller, Commack, New York City, by Jeffrey T. Heller, of counsel, for defendants Pro–Tech Construction, Inc., John Varanelli, and Lucille Varanelli.

Feldman & Rudy, P.C., Westbury, New York City, by Brian Rudy, of counsel, for defendants Feldman & Rudy, P.C. and Brian Rudy.

Croutier & Ryan, Garden City, New York, by Thomas C. Awad, of counsel, for defendants Hoffman Construction and Robert Hoffman.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case originated with a 99–page, 1087–paragraph amended complaint in which a *pro se* plaintiff, Joseph Bologna ("Bologna" or the "plaintiff"), individually and doing business as U.S.A. Development, raises 57 causes of action against Allstate Insurance Company ("Allstate" or a "defendant"), Philip Genova ("Genova" or a "defendant"), George Loue ("Loue" or a "defendant"), Dennis Meehan ("Meehan" or a "defendant"), Anne Iguanti ("Iguanti" or a "defendant"), Gary Pace ("Pace" or a "defendant") (collectively, the "Allstate defendants"), Sears, Roebuck and Co. ("Sears" or a "defendant"), James North ("North" or a "defendant") (collectively, the "Sears defendants"), Pro–Tech Construction, Inc. ("Pro–Tech" or a "defendant"), John Varanelli ("Varanelli" or a "defendant"), Lucille Varanelli ("L. Varanelli" or a "defendant") (collectively, the "Pro–Tech defendants"), Feldman & Rudy, P.C. ("Feldman & Rudy" or a "defendant"), Brian Rudy ("Rudy" or a "defendant") (collectively the "Rudy defendants"), Hoffman Construction ("Hoffman Construction" or a "defendant"), Robert Hoffman ("Hoffman" or a "defendant") (collectively, the "Hoffman defendants"),

and all Quality Vendor Program Members ("QVPM's" or a "defendant") (collectively, the "defendants"). Presently before the Court are two motions to dismiss the complaint: one brought by the Allstate and Sears defendants and the other brought by the Rudy defendants.

## I. *BACKGROUND*

Unless otherwise stated, the following facts are from the plaintiff's amended complaint. · On September 18, 1993 a fire caused substantial damage to property owned by Rose Scavo ("Scavo") at 11 Colonial Place, Centereach, New York (the "premises"). The premises was insured against fire loss by Allstate. The Centereach Fire Department declared the premises unsafe for habitation due to extensive damage caused by the fire and the resulting unsafe conditions. In addition, the Long Island Lighting Company cut the electricity to the premises.

On September 22, 1993, Scavo and Bologna, Scavo's son-in-law and the owner and operator of USA Development, entered into a contract (the "General Management Agreement"), whereby the plaintiff agreed to perform and manage all restoration of the damaged property including subcontracting any of the restoration that he could not do on his own. The General Management Agreement, which governed the restoration, stated that the "General Manager shall act in the stead of the Owner in all matters pertaining to the Property until repairs are complete, all funds are collected, all creditors are paid, and all aspects of the project are completed." In addition, the Agreement stated that the "General Manager shall cause to be restored the dwelling and real property to at least its condition before the fire loss" (*see* amended complaint, ex. 3, p. 1). Under the Agreement, the plaintiff had a duty to pay the expenses to restore the property,

and he relied on a fair settlement of the insurance claims to meet these obligations.

On September 20, 1993, the plaintiff reported the fire to Genova, an Allstate claims adjuster. The plaintiff and Genova agreed to meet at the premises on September 22, 1993 (the "site meeting"). Genova also asked Bologna for permission to invite Varanelli, an independent contractor and a principal of Pro–Tech, to the site meeting so that Bologna could meet Varanelli and determine whether he wanted to subcontract some of the work to him. Bologna agreed to include Varanelli in the site meeting.

Genova, Varanelli and the plaintiff met at the premises on September 22, 1993, and agreed to record the meeting on audiotape. During the meeting, Genova inspected the premises and opened two personal property claims files. The first was for damaged personal property, and the second for missing or destroyed property. The plaintiff gave Genova an inventory of the destroyed and damaged personal property. He included receipts for and photographs of the property and set forth their estimated replacement values.

Bologna alleges that Varanelli told him that Pro–Tech was a "Sears Restoration Contractor," and that although Allstate was recommending Pro–Tech for the repair work, Pro–Tech would be working for Bologna, not Allstate. The plaintiff retained Pro–Tech to represent his interest, to provide an estimate of repair costs, and to perform emergency repairs to secure the property. Thereafter, Pro–Tech performed emergency repairs at the property.

On November 2, 1993, the plaintiff received the repair estimate from Sears, Pro–Tech, and Varanelli. The plaintiff alleges that Genova acknowledged that the estimate was too low, but claimed that it was to ensure that Pro–Tech would get the job and said that the shortfall would be

made up later. On November 10, 1993, the plaintiff discharged Pro–Tech. On November 12, 1993, Bologna hired a public adjuster, Howard Cohen, who concluded that the prior estimate was substantially undervalued.

The complaint alleges that the repair work performed by Pro–Tech, Sears, and Varanelli was "inferior and substandard" and that Allstate and Genova "did not properly supervise or inspect the repairs." As a result, the plaintiff claims that the Town of Brookhaven required that the work be redone. In April 1994, Allstate and Bologna entered into an Appraisal Agreement through the American Arbitration Association, pursuant to which Allstate and Bologna agreed to select separate impartial appraisers to evaluate the loss to the property. Allstate's attorneys, the defendant Feldman & Rudy, selected defendant Hoffman Construction, the principal of which is defendant Hoffman as its impartial appraiser. Bologna selected Frank T. Porco ("Porco"), a public adjuster. Hoffman evaluated the loss at $57,000 while Porco appraised the loss at $150,000. When the parties could not settle the difference, an arbitration award was made in the sum of $88,491.28. The plaintiff commenced restoration work on the property on October 4, 1995, and substantially completed the work in July 1997.

On November 17, 1995, Bologna, acting pursuant to a power of attorney, commenced an action in the name of Rose Scavo in the Supreme Court of the State of New York, Suffolk County, against Allstate and Genova (the "state complaint"). The state complaint alleges that Genova handled the claim for Allstate and met with Bologna at the loss site on September 22, 1993. The state complaint further alleges that Genova insisted that Bologna use a specific contractor, namely Varanelli's Pro–Tech, to perform the estimates and repairs, and that a failure to do so would result in "adverse consequences." The state complaint maintains that Varanelli's estimates were grossly insufficient but would be supplemented by additional funds if Bologna agreed to accept the lower bid. The state complaint further contends that Bologna would receive kickbacks if he agreed to employ Varanelli. According to the state complaint, Bologna hired a public adjustor, an act that caused Allstate and Genova to retaliate by cutting off funding for the repairs. The state complaint further alleges that Allstate obtained a fraudulently low bid for the arbitration from Hoffman, who was a biased estimator, and that the resultant arbitration award was fraudulent.

The state complaint raised causes of action sounding in fraud, bad faith, breach of duty, bad faith fraud, breach of contract, deceptive business practices, and punitive damages. On appeal, the Second Department found that the complaint stated a claim for deceptive business practices and breach of contract in connection with the adjustment of a first-party insurance claim. *See Scavo v. Allstate Ins. Co.*, 238 A.D.2d 571, 657 N.Y.S.2d 193 (2d Dept. 1997).

On September 14, 1998, the plaintiff commenced this action. The amended complaint alleges 57 causes of action. In particular, Bologna claims breach of contract (1st, 6th, 9th, 16th causes of action) negligence (2nd 4th 7th, 10th, 13th, 15th, 17th, 33rd, 34th, 35th 36th, 37th, 38th, 39th, 40th, 41st 42nd, 43rd, 44th, 45th, 46th, 49th, 50th, causes of action), fraud (3rd 5th 8th, 11th, 14, 18th 53rd causes of action), false advertising (12th cause of action), breach of warranty (12th cause of action), discrimination (32nd cause of action), insurance fraud (47th and 48th causes of action), mail fraud (51st cause of action), and wire fraud (52nd cause of ac-

tion) by the Allstate, Sears, Pro–Tech, Rudy, Hoffman, and QVPM defendants, and their defendant employees. The amended complaint also sets forth RICO and antitrust causes of action (54th and 55th causes of action and 19th, 20th, 21st, 22nd, 23rd, 24th 25th, 26th, 27th, 28th, 29th, and 30th causes of action, respectively) in addition to a claim that the defendants violated two different sections of New York's General Business Law (31st and 56th causes of action). Lastly, in his 57th cause of action, the plaintiff claims that he is entitled to punitive damages.

The plaintiff's contract and negligence claims allege that Sears, Pro–Tech, and Varanelli failed to represent him properly in his dealings with Allstate; provided a dishonest estimate of repair costs; failed to obtain the necessary construction permits; and negligently performed emergency repairs. Bologna further alleges that Allstate and Genova are also responsible for the allegedly "substandard" reconstruction work, because they failed to supervise and inspect the reconstruction. Bologna also claims that Genova and Allstate intentionally delayed the settlement of his claim and threatened to terminate his policy in an attempt to avoid having to pay the lost rents and to coerce Bologna into accepting a lower settlement figure. Bologna further maintains that Allstate should have reimbursed him for his personal property destroyed in the New York fire that he claims was insured by his Florida policy.

With regard to the fraud causes of action, the plaintiff asserts that at the site meeting, Varanelli told him he was employed by Sears and would like Bologna to hire him as the reconstruction contractor for the premises. Bologna claims that Varanelli also advised him that he was present at the site meeting to represent Bologna's interest. Bologna alleges that

Genova encouraged him to hire Varanelli to perform the reconstruction. According to Bologna, the statements made by Genova and Varanelli were false because they did not indicate that Varanelli's interests were aligned with those of Genova and Allstate in that Allstate was a subsidiary of Sears. Bologna claims that he relied on Genova and Varanelli's statements and permitted Varanelli to repair the premises. However, according to the plaintiff, Varanelli's work was of such inferior and substandard quality that it did not meet requirements of the Town Code, and Bologna was forced to redo the repair work at his own expense.

The plaintiff's antitrust claims allege that the defendants were engaged in a conspiracy that operated under the name, "Quality Vendor Program ('QVP')". By the terms of this alleged conspiracy, the defendants agreed that only "approved" contractors, QVPM's, would be retained to do restoration work on buildings insured by Allstate. Thus, when an Allstate-insured building, suffered damage, the claimant was forced to hire a QVPM to do the repair work. Once hired, QVPMs submitted estimates that were severely undervalued and repairs that were grossly inferior. Bologna alleges that the substandard estimates and reconstructions worked to Allstate's benefit. Bologna further alleges that Allstate demanded that the QVPM's pay a fee or kickback to retain their membership in the QVP.

According to the plaintiff, the QVP enabled the defendants to fix prices in the market for restoration work on Allstate-insured buildings, create a monopoly for repair work performed in the Allstate claimants' market, and exclude competition from other contractors by giving the reconstruction contracts for work on Allstate-insured buildings exclusively to QVPMs. In addition, Bologna claims that

Sears illegally tied its products to Allstate insurance contracts by giving claimants a 5% discount on all Sears merchandise purchased for the purpose of repairing or replacing items and structures insured by Allstate. The plaintiff maintains that any contractor that was not a QVPM was forced to spend more money than a QVPM to win a contract to repair an Allstate-insured building.

Bologna alleges that Pro–Tech and Sears are the QVPMs relevant to the case at hand, because Pro–Tech is a Sears Restoration Contractor, Pro–Tech performed the repair work on the premises, and Sears owns Allstate, which insured the premises. Bologna maintains that the QVP excluded his company, USA Development, from the Allstate claimants market and prevented USA Development from receiving the contract for repairs on the premises.

With respect to his discrimination claim, the plaintiff alleges that the defendants were involved in a scheme to favor a minority group of contractors, agents and claimants. Bologna asserts that QVPM contractors received contracts to repair Allstate-insured buildings, while non-QVPM contractors did not. He also alleges that the defendants treated one Alexandria Johnson, an Allstate claimant, in a favorable manner, by overestimating the value of her property, due to her relationship with Meehan, Varanelli, and other Allstate employees. The plaintiff asserts that he did not receive the same favorable treatment, because he did not have such a relationship with Allstate representatives. Bologna claims that the defendants' conduct was arbitrary, irrational, not reasonably related to a legitimate purpose, and violated his Fourteenth Amendment rights.

The plaintiff's insurance fraud claim alleges that the defendants gave the plaintiff a false estimate of the cost of repair and false documents. Bologna's claims that the plaintiff's violated the New York General Business Practices Law consist of (1) an allegation that the defendants engaged in deceptive business practices in violation of section 349; and (2) an allegation that the defendants had formed a monopoly in violation of Article 22.

Finally, the plaintiff contends that the defendants violated the RICO statute by using QVPM's to perform appraisals, thereby manipulating the amount of the appraisals and ensuring that only QVPM's receive the repair contracts for Allstate-insured buildings. Bologna's mail and wire fraud claims allege that the defendants used the mails and interstate telecommunications lines to communicate with one another and advance their fraudulent schemes.

## II. DISCUSSION

### A. Standard of Review

■ On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). The Court

must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

In addressing the defendants' motions, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his or her lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, District Courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

The Court acknowledges that although the *pro se* plaintiff is held to a less stringent pleading standard, the Court has the authority to dismiss frivolous claims *sua sponte*. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363 (2d Cir.2000) (holding that district courts may dismiss frivolous complaint *sua*

*sponte* even when the plaintiff has paid the required filing fee). Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have a great[ ] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Id.* at 364. A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## B. The Antitrust Claims

The plaintiff asserts that the defendants have violated sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act. A private plaintiff seeking damages for a violation of the antitrust laws must establish standing to sue. *See George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir. 1998); *S.O. Textiles Co., Inc. v. A & E Products Group*, 18 F.Supp.2d 232, 242 (S.D.N.Y.1998). To establish standing in an antitrust case, the plaintiff must allege that it has suffered an "antitrust injury." *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) ("The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."); *George Haug*, 148 F.3d at 139.

"The antitrust injury requirement obligates a plaintiff to demonstrate, as a threshold matter, 'that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice.' " *George Haug*, 148 F.3d at 139 (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 543 (2d Cir.1993)); *see also Atlantic Richfield*, 495 U.S. at 343–44, 110 S.Ct. at 1893–94;

*S.O. Textiles,* 18 F.Supp.2d at 242. "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations ... would be likely to cause." *Brunswick Corp. v. Pueblo Bowl–O–Mat,* 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). Indeed, "[t]he antitrust laws ... were enacted for 'the protection of competition, not competitors.'" *Id.* at 488, 97 S.Ct. at 697 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)).

■ Here, Bologna fails to plead the requisite antitrust injury because he alleges injury only to himself as a competitor and does not make specific factual allegations concerning any injury to competition in the market. Notably, the identity of the relevant market is vague. The complaint refers to the Allstate claimants as a market; however, his company is not a consumer or competitor in that market. Rather, Bologna claims to have been excluded from the market for performing repairs on Allstate-insured buildings. Furthermore, it is questionable whether Bologna was even a competitor in the market, given that his company may not be licensed to build in Suffolk County.

■ Nevertheless, even if the identity of the market were clearly defined to be contractors performing repairs on Allstate-insured buildings and Bologna were a competitor or consumer in that market, Bologna still fails to allege a market injury. In each of his twelve antitrust causes of action, the only injury Bologna describes is that he was forced to spend his own money to redo the inferior work performed by the defendants, thereby damaging him in the amount of $350,000. Bologna does not claim that USA Development's contracting services are no longer available in the market. Even if Bologna had alleged that he was foreclosed from the market entirely, that would not necessarily constitute an antitrust violation in the absence of an anticompetitive effect on the industry as a whole. *See Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 133–34 (2d Cir.1978). Moreover, Bologna does not assert that the cost of performing repairs in buildings insured by Allstate has risen or that Allstate's rates have risen as a result of the defendants' conduct.

In sum, Bologna has failed to show that the defendants' conduct had an adverse effect on the market as a whole, as opposed to simply himself as an individual competitor. Having failed to allege an injury "of the type the antitrust laws were intended to prevent," *see Brunswick Corp.,* 429 U.S. at 488, 97 S.Ct. 690 Bologna lacks standing to prosecute his antitrust claims (the 19th, 20th, 21st, 22nd, 23rd, 24th, 25th, 26th, 27th, 28th, 29th, and 30th causes of action), and they are dismissed.

**C. New York State General Business Law**

■ The plaintiff's 31st cause of action alleges a violation of New York General Business Law § 340 (the Donnelly Act), and the plaintiff's 56th cause of action alleges a violation of section 349 of the General Business Law. "The New York Court of Appeals has held that the Donnelly Act 'should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory interpretation or the legislative history justify such a result.'" *S.O. Textiles,* 18 F.Supp.2d at 244 (quoting *Anheuser–Busch, Inc. v. Abrams,* 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988)). Bologna has not set forth any policy, differences in statutory interpretation or legislative history that support this Court in-

terpreting the Donnelly Act more broadly than the federal antitrust laws in this case. Thus, in light of the dismissal of the plaintiff's antitrust claims, the Court also dismisses the 31st cause of action, alleging a Donnelly Act violation. *See S.O. Textiles,* 18 F.Supp.2d at 244. The Court addresses the 56th cause of action below when it considers the plaintiff's remaining state law claims.

## D. RICO

■ Bologna alleges two civil RICO cause of action (54th and 55th causes of action). To state a civil RICO claim, a plaintiff must plead facts alleging that "he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999). The predicate acts alleged by the plaintiff include obstruction of justice—referring to the alleged erasure of the tape recording site meeting discussions—wire fraud, and mail fraud. In regard to the wire and mail fraud claims, the plaintiff contends that the defendants used the mails and interstate telecommunications lines to advance their pattern of racketeering.

### 1. Obstruction of Justice

■ "To constitute an offense under [RICO], the act must relate to a proceeding in a federal court of the United States." *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 707 (2d Cir.1990) (citing *United States v. Biaggi,* 853 F.2d 89, 104 (2d Cir.1988)); *see* 18 U.S.C. § 1503. Bologna claims that the defendants erased a portion of the tape-recorded telephone meeting, and submitted the altered tape to the Supreme Court during the state proceeding. Bologna maintains that these acts constitute an obstruction of justice. However, none of

Costello's allegations relate to proceedings in a federal court as required by 18 U.S.C. §§ 1503, §§ 1961(1). *See O'Malley,* 896 F.2d at 707–08. Thus, Costello's allegations are insufficient to establish the predicate act of obstruction of justice.

### 2. Mail and wire fraud

■ Where the alleged predicate acts involve mail and wire fraud, the allegations must meet the rigorous pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172 (2d Cir.1999); *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To specify acts of alleged wire and mail fraud with the necessary particularity, the complaint should contain evidence of the content, time, place, and speaker of each alleged mailing or wire transmission. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990). In addition, mail and wire fraud claims must set forth (1) the existence of a scheme to defraud; (2) the defendant's knowledge or intentional participation in the scheme; and (3) the use of interstate mails or wires to further the fraudulent scheme. *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir. 1996).

■ Here, Bologna's claims are insufficient to satisfy the particularity requirement of Rule 9(b). He makes the following two assertions: (1) "On several occasions, the Defendants committed Mail Fraud when they used the U.S. Mail to advance their racketeering" (amended complaint ¶ 1042); and (2) "On several occasions, the Defendants committed Wire Fraud when they used interstate telecommunication lines to ad-

vance their racketeering" (amended complaint ¶ 1043). Nowhere in his 99-page complaint does Bologna point to any false statements made to him using the mails or telecommunications lines. In fact, viewing Bologna's complaint to raise all the arguments it suggests, the Court finds that Bologna refers to only two allegedly false statements, and those were made orally, in person, at the site-meeting. Bologna has simply regurgitated the generic requirements of the RICO statute and the mail and wire fraud statutes. Having failed to satisfy the requirements of Rule 9(b), the plaintiff's RICO claims (54th and 55th causes of action) based on mail and wire fraud are dismissed.

### E. Mail and Wire Fraud Claims

 Bologna's amended complaint includes distinct causes of action for mail and wire fraud (51st and 52nd causes of action). However, no private right of action exists under either 18 U.S.C. § 1341 or 18 U.S.C. § 1343. *See, e.g., Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir.1989); *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465, 478 (E.D.N.Y.1998). Consequently, the plaintiffs mails and wire fraud claims (51th and 52nd causes of action) are dismissed.

### F. Discrimination

 Bologna claims that the defendants engaged in a scheme to favor a minority group of contractors but does not set forth the statute under which he makes this claim. Viewing the amended complaint to raise all of the arguments it suggests, the Court will treat the amended complaint as alleging claims under 42 U.S.C. §§ 1981, 1983. Section 1983 liability attaches only to those wrongdoers "who carry a badge of authority of a State and

represent it in some capacity, whether they act in accordance with their authority or misuse it." *Nat'l Collegiate Athletic Assoc. v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). Here, Bologna does not assert discriminatory conduct by a state actor or and individual acting under color of state law. Thus, to the extent that he brings a claim pursuant to Section 1983, that claim is dismissed.

 Unlike claims arising under Section 1983, Section 1981 claims may be brought against private actors who intentionally discriminate on the basis of race or ethnicity. *See* 42 U.S.C. § 1981; *Runyon v. McCrary*, 427 U.S. 160, 168–75, 96 S.Ct. 2586, 2593–97, 49 L.Ed.2d 415 (1976); *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir.1988). Bologna does not assert that the defendants discriminated against him or his company based on his race or ethnicity. Accordingly, to the extent that he claims he the defendants discriminated against him, his claim is dismissed. Thus, the defendants' motion to dismiss the 32nd cause of action is granted.

### G. False Advertising

Allstate does not specifically move to dismiss the plaintiff's twelfth cause of action. However, in examining the amended complaint and the parties' submissions in connection with the present motions, the Court finds that the cause of action lacks a basis in the law for the reasons stated below. Thus, the claim is frivolous, *see Neitzke*, 490 U.S. at 325, 109 S.Ct. 1827 and the Court dismisses it *sua sponte*. *See Fitzgerald*, 221 F.3d at 363.

As a twelfth cause of action, Bologna alleges that Allstate's use of the slogan, "You're in good hands with Allstate," constituted false advertising and created a warranty which Allstate breached by alleg-

edly deceiving the plaintiff regarding the relationship it had with Sears, Pro–Tech, and Varanelli. Bologna brings this cause of action pursuant to the "Printers Ink Statute." The Printers Ink Statute is "[a] model statute drafted in 1911 and adopted in some variations in a number of states making it a misdemeanor to advertise a representation that is untrue, deceptive or misleading." Black's Law Dictionary (1990). The Court is not aware that the New York State legislature or Congress has adopted this model statute. Nevertheless, the Court is obligated to draw all reasonable inferences in the amended complaint in Bologna's favor, *Koppel,* 167 F.3d at 127; *Jaghory,* 131 F.3d at 329, and to hold the *pro se* plaintiff's amended complaint " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes,* 449 U.S. at 9, 101 S.Ct. at 176 (quoting *Haines,* 404 U.S. at 520, 92 S.Ct. at 594). Keeping these principles in mind, the Court construes the plaintiff's 12th cause of action to raise a false advertising claim under Section 41(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and Section 350 of New York's General Business Law in addition to a claim for breach of express warranty.

 To establish a false advertising claim under the Lanham Act, Bologna must demonstrate that the challenged advertisement is false. *Lipton v. The Nature Company,* 71 F.3d 464, 474 (2d Cir. 1995). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers." *Id.* (citing *McNeil–P.C.C., Inc. v. Bristol– Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991)). General assertions or opinions about a service constitute mere "puffing" which is not actionable under the Lanham Act. *See Lipton,* 71 F.3d at 474. Further-

more, subjective claims that cannot be proven true or false cannot be the basis of a Lanham Act violation. *See id.* (quoting *Groden v. Random House, Inc.,* 1994 WL 455555, at *5 (S.D.N.Y.1994), *aff'd,* 61 F.3d 1045 (2d Cir.1995)).

 Here, Allstate's assertion, "You're in good hands with Allstate," is general, subjective, and cannot be proven true or false. Accordingly, the statement is mere puffery that is not actionable under the Lanham Act. *See Lipton,* 71 F.3d at 474 (finding the defendant's statement that the research he conducted was "thorough[ ]" was mere puffing and not actionable under the Lanham Act); *Randa Corp. v. Mulberry Thai Silk, Inc.,* 2000 WL 1741680, *2 (S.D.N.Y.2000) (holding that defendant's statement that he "would predict that the current licensee's recent acquisition of Regis Philbin Neckwear will cause a revenue loss to Geoffrey Beene Neckwear of up to 30% in department store sales" was a prediction and not actionable under the Lanham Act); *Cytyc Corporation v. Neuromedical Systems, Inc.,* 12 F.Supp.2d 296, 300 (S.D.N.Y.1998) (finding that statement that described new product as "the new 'Gold Standard' " was puffery and not actionable under the Lanham Act); *Rodio v. Smith,* 123 N.J. 345, 352, 587 A.2d 621, 624 (1991) (holding that Allstate's slogan, "You're in good hands with Allstate," is not a statement of fact, deception, false promise, or misrepresentation, but simply puffery). To the extent that Bologna raises a false advertising cause of action under the Lanham Act, that claim is dismissed for failing to state a claim upon which relief can be granted.

 With regard to Bologna's allegation that Allstate's slogan created an express warranty which Allstate thereafter breached, that claim must fall for the same reason the Lanham Act claim is dismissed. *See Hubbard v. General Motors Corp.,*

1996 WL 274018, *6 (S.D.N.Y.1996) (holding that statements which were mere puffery do not support claim for breach of express warranty); *The Sample, Inc. v. Pendleton Woolen Mills, Inc.*, 704 F.Supp. 498, 505–06 (S.D.N.Y.1989) (same); *Bader v. Siegel*, 238 A.D.2d 272, 272, 657 N.Y.S.2d 28 (1st Dept.1997) (holding vague promises by advertisers cannot be enforced as a contract because they are incapable of being proven true or false). Because Allstate's promise is a generalized, exaggerated statement of opinion, a reasonable person would not rely upon it as a statement of Allstate's obligations. *See Hubbard,* 1996 WL 274018, at *6 (finding that GM's advertisement claiming that Suburbans were "popular", "dependable", and "like a rock" was puffery that did not create express warranty); *The Sample, Inc.*, 704 F.Supp. at 504 (concluding that the defendant's advertisement about "relationships that last a lifetime" could not reasonably be relied upon as a statement of the defendant's obligations). Therefore, the statement did not create an express warranty upon which Bologna could reasonably rely, and the plaintiff's claim for breach of express warranty is dismissed. *See Hubbard,* 1996 WL 274018, at *6; *The Sample, Inc.*, 704 F.Supp. at 504.

 Bologna's allegations of false advertising fail to state a claim under Section 350 of the General Business Law as well. Although section 350 creates a private right of action for injury suffered as a result of false advertising, an individual has standing to sue only if he "alleges injury in [his] role as a consumer that affects the public interest." *Oliveira v. Frito-Lay, Inc.*, 1997 WL 324042, at *7 (S.D.N.Y.1997). " 'Private transactions not of a recurring nature or without ramifications for the public at large are not a proper subject of,' " a claim under section 350. *Robinson v. Viacom Int'l, Inc.*, 1995

WL 417076, *12 (S.D.N.Y.1995) (quoting *Genesco Entertainment v. Koch,* 593 F.Supp. 743, 752 (S.D.N.Y.1984)). Bologna describes his injury as having to "expend [his] own funds to overcome Allstate's improper advertising" (amended complaint ¶ 391). Bologna's alleged injury was suffered as the result of a private transaction and therefore is not properly the subject of an action under section 350. *See Oliveira,* 1997 WL 324042, at *7; *Robinson,* 1995 WL 417076. In sum, Bologna's 12th cause of action is dismissed for failing to state a claim for relief under the Lanham Act, section 350 of the General Business Law, common law principles of breach of warranty.

## H. The Remaining State Law Claims

 Although Bologna was not the plaintiff in the state court action, he is in privity with Scavo for the purposes of issue preclusion, claim preclusion, and the Rooker–Feldman doctrine. Privity exists where there is "substantial identity of the incentives of the earlier party with those of the party [in the present action.]" *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2d Cir.1995). Stated differently, the question is "whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation." *Id.* at 346. The inquiry is a functional one in which the trial court must consider a variety of factors, *id.,* including the existence of a trust relationship, control of the previous litigation, evidence that the party in the current litigation was vested with the authority to represent the party in the prior, or some other agreement by the parties to be bound by the prior judgment. *See In re Petition of American Historical Ass'n,* 49 F.Supp.2d 274, 289 (S.D.N.Y.1999) (citing *South Cent. Bell Tel. Co. v. Alabama,* 526 U.S. 160, 168, 119 S.Ct. 1180, 1185, 143 L.Ed.2d 258 (1999)).

■ Here, Bologna and Scavo were clearly in privity. Four days after the fire at the premises, Bologna and Scavo executed a contract whereby Bologna agreed to perform and manage all restoration of the damaged property and to "act in the stead of the Owner in all matters pertaining to the Property until repairs are complete, all funds are collected, all creditors are paid, and all aspects of the project are completed" (amended complaint, ex. 3, p. 1). According to this agreement, Bologna controlled the entire reconstruction process, with little or no input from Scavo. Because any monetary losses incurred in the reconstruction process were borne by Bologna, his interests were represented in the state litigation, which sought to recover, among other things, damages for the allegedly shoddy repairs to the premises. *See Chase*, 56 F.3d at 346; *In re American Historical Ass'n*, 49 F.Supp.2d at 289.

Moreover, Scavo granted Bologna power of attorney prior to the state lawsuit. As such, he not only had the authority to represent Scavo in the prior litigation, he controlled the prior lawsuit. *See In re American Historical Ass'n*, 49 F.Supp.2d at 289. Bologna's interests were obviously represented in the state case. Therefore, the Court finds that Bologna and Scavo are in privity for the purposes of the Rooker–Feldman doctrine.

■ The Rooker–Feldman doctrine prevents lower federal courts from reviewing a claim that would result in a reversal or modification of a state court judgment, because only the United States Supreme Court may review such judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998). The doctrine

provides that a federal court lacks subject matter jurisdiction over a federal claim that is "inextricably intertwined" with a state court's determinations. *See Hachamovitch v. DeBuono*, 159 F.3d at 694; *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

■ The Second Circuit has equated the phrase, "inextricably intertwined" with the law of preclusion. *See Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996); *Davis v. City of New York*, 2000 WL 1877045, at *4 (S.D.N.Y.2000). Thus, where a claim is barred by the doctrines of res judicata or collateral estoppel, this Court lacks the subject matter jurisdiction to hear the it. *See Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 137–38 (2d Cir.1997); *Moccio*, 95 F.3d at 199–200.

■ Under New York law, the doctrine of res judicata, claim preclusion, bars future litigation of claims that were or could have been raised in a prior proceeding that resulted in a final judgment on the merits. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997); *Marinelli Assocs. v. Helmsley Noyes Co., Inc.*, 265 A.D.2d 1, 5–6, 705 N.Y.S.2d 571, 574 (1st Dept.2000). "Pursuant to this approach, the doctrine bars not only claims that were actually litigated but also claims that could have been litigated, if they arose from the same transaction or series of transactions." *Marinelli*, 265 A.D.2d at 5, 705 N.Y.S.2d at 574; *see Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir.1997).

The amended complaint filed by Scavo in state court alleges breach of contract, fraud, and deceptive business practices against Allstate and Genova. The state court claims are based on the identical set of facts that form the basis of the plaintiff's present amended complaint. In par-

ticular, Scavo alleged that Allstate forced Bologna to hire a specific contractor to perform the estimates and repairs on the premises; the contractor provided grossly insufficient estimates and performed substandard repairs; Scavo was forced to expend her own money to repair the premises and lost rental income as a result of Allstate's intentional delay in processing her claim; and Allstate failed to replace Scavo's personal property that was destroyed in the fire. The only real difference between the state and federal amended complaints is that in the federal action, Bologna named the "specific contractor" as well as Allstate's employees and the defendants' attorneys as defendants. Thus, the Court is of the opinion that state and federal cases were based on the same set of facts and transactions.

■■■■ In a decision rendered on April 28, 1997, the Second Department found that Scavo's complaint failed to state a claim for fraud, bad faith, or breach of contract, but did state a claim for deceptive business practices under section 349 of the General Business Law. *See Scavo v. Allstate*, 238 A.D.2d 571, 571, 657 N.Y.S.2d 193, 194 (2d Dept.1997). Bologna's present claims of fraud and breach of contract were raised and decided on the merits in the state court action. Relitigation of those claims is barred by the doctrine of res judicata. *Maharaj*, 128 F.3d at 97; *Marinelli*, 265 A.D.2d at 5–6, 705 N.Y.S.2d at 574. In addition, when Bologna was representing Scavo's interests in state court, he clearly was in a position to raise his present claims of negligence and insurance fraud, as those claims are based on the same set of transactions as those alleged in state court. Bologna has simply assigned a different legal theory to them here. The mere fact that it is possible to characterize each of the alleged acts as an independent cause of action or cast them

in a different legal theory "does not diminish the essential interconnection of these ongoing acts or the expectation that they would be tried as a single unit." *Marinelli*, 265 A.D.2d at 6, 705 N.Y.S.2d at 574. As Bologna could have raised his negligence and insurance fraud claims in state court, the doctrine of res judicata bars relitigation of those claims as well.

■■■■ Thus, with the exception of Bologna's deceptive business practices claim, all of the plaintiff's state law causes of action are "inextricably intertwined" with the claims that were brought in state court. Accordingly, the Court lacks subject matter jurisdiction over the plaintiff's fraud, negligence, breach of contract, and insurance fraud claims pursuant to the Rooker–Feldman doctrine. *See Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 137–38 (2d Cir.1997); *Moccio*, 95 F.3d at 199–200. As such, the Court dismisses the 1st, 6th, 9th, and 16th causes of action (breach of contract), the 2nd, 4th, 7th, 10th, 13th, 15th, 17th, 33rd, 34th 35th, 36th, 37th 38th, 39th, 40th, 41st 42nd, 43rd, 44th 45th 46th, 49th, 50th, causes of action (negligence), the 3rd, 5th 8th, 11th, 14, 18th, 53rd causes of action (fraud), and the 47th and 48th causes of action (insurance fraud).

■■■■ The Appellate Division, however, did not decide Bologna's section 349 claim on the merits. Section 349 of the General Business Law provides, in relevant part, that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y.Gen.Bus.L. § 349(1). The Second Department concluded that "the plaintiff's cause of action alleging violation of General Business Law § 349, which seeks damages and attorney's fees, should not be dismissed at this stage of the litigation." *Scavo*, 238 A.D.2d at 572, 657 N.Y.S.2d at

194–95. Because the state court has not decided the plaintiff's section 349 claim on the merits, this Court still retains subject matter jurisdiction over the claim under the Rooker–Feldman doctrine.

■■■ However, the Court must abstain from considering this claim under the *Younger* abstention doctrine. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). "Abstention is warranted where a state judicial proceeding is ongoing, implicates important state interests, and affords an adequate opportunity to raise constitutional challenges." *Doe v. State of Connecticut, Dep't. of Health Servs.,* 75 F.3d 81, 85 (2d Cir.1996). The doctrine derives from the recognition that interference by a federal court with a state proceeding, "would entail unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally, with the federal courts to guard, enforce, and protect every right granted or secured by the Constitution of the United States." *Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).

The Court finds that there is a state proceeding currently pending before the Supreme Court, Suffolk County. As noted, the Second Department held that Scavo had stated a claim for a violation of section 349 of the General Business Law. Neither party has indicated that the state proceedings with regard to Scavo's section 349 claim have concluded. Accordingly, the Court finds there is an "ongoing state proceeding" with regard to this matter which satisfies the first element of the *Younger* test.

As for the second requirement, the Court finds that the state proceeding implicates important state interests. In *New Orleans Pub. Serv. Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court noted that in determining the substantiality of the state's interest in its proceeding, a court must "not look narrowly to [the state's] interest in the outcome of the particular case," but rather, to the "importance of the generic proceedings to the state." The state court proceeding is a civil action brought to enforce adherence to the state's business laws. Indeed, New York has an interest to prohibit deceptive business practices within the state, especially in the insurance industry. *See, e.g., SEC v. National Securities, Inc.,* 393 U.S. 453, 459, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (holding that "states ha[ve] a free hand in regulating the dealings between insurers and their policyholders").

As for the third and final requirement, the Court finds that the plaintiff does have an adequate opportunity to raise constitutional challenges in the state proceeding. However, the plaintiff apparently have made no attempt to do so. Accordingly, the Court finds that the third requirement for the *Younger* abstention doctrine is satisfied. As such, the plaintiff's claim for a violation of section 349 of the General Business Law is stayed pending the outcome of the state court proceedings.

■■■ Next, the plaintiff's 57th cause of action for punitive damages is dismissed for failing to state a claim upon which relief may be granted. It is well settled that there is no separate cause of action for punitive damages exists. *See Rocanova v. Equitable Life Assurance Soc'y of the United States,* 83 N.Y.2d 603, 616–17, 612 N.Y.S.2d 339, 344–45, 634 N.E.2d 940 (1994). The New York Court of Appeals has held that a demand for punitive damages "is parasitic and possesses no viability absent its attachment to a substantive cause of action." *Id.; see Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1431 (2d Cir.1997). Bologna has not attached his

claim for punitive damages to a substantive cause of action. Moreover, even if he had, the only substantive claim that has survived the motion to dismiss is his claim for deceptive business practices, but that cause of action has been stayed pending the outcome of the state proceedings. Because the Court must construe Bologna's complaint to raise every claim that it asserts, the Court interprets Bologna's cause of action for punitive damages to be attached to his claim for deceptive business practices. Applying the *Younger* abstention doctrine, the Court concludes that the cause of action for punitive damages is stayed pending the outcome of the state case.

**I. The Rudy Defendants**

As noted, one of the two motions before the Court is that submitted by the Rudy defendants. The causes of action that the Court has already dismissed are the only claims that the plaintiff has asserted with respect to the Rudy defendants. The deceptive business practices claim and the attached punitive damages claim are brought only with respect to the Allstate and Sears defendants. Accordingly, the motion to dismiss the amended complaint by the Rudy defendants is granted.

**J. The Individual Defendants**

The deceptive business practices cause of action and attached punitive damages claim, as well as the factual allegations supporting them, do not contain any specific allegations with respect to individual defendants North, Loue, Meehan, Inguanti, and Pace. Accordingly, the Court grants those defendants' motions to dismiss the amended complaint against them.

**III. *CONCLUSION***

Having reviewed the submissions of the parties, it is hereby

**ORDERED,** that the Rudy defendants' motion to dismiss the amended complaint is **GRANTED;** and it is further

**ORDERED,** that the motion by individual defendant North, Loue, Meehan, Inguanti, and Pace to dismiss the amended complaint as against them is **GRANTED,** and it is further

**ORDERED,** that the motion by the Allstate and Sears defendants to dismiss the amended complaint is **GRANTED,** in part and **DENIED** in part, such that all causes of action except that for deceptive business practices and punitive damages are dismissed; and it is further

**ORDERED,** that the 56th and 57th causes of action for a violation of General Business Law § 349, and for punitive damages are stayed pending the outcome of the state court proceedings; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption of the complaint to read as follows:

**SO ORDERED.**